UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN J. MIKLOS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 4:07-CV-273 (CEJ) ) |
| RALCORP HOLDINGS, INC., and BREMNER, INC.,[1] | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' joint motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c). Plaintiff has filed an opposition to the motion and the issues are fully briefed.

Plaintiff John J. Miklos was employed by defendant Ralcorp Holding, Inc., and its subsidiary, defendant Bremner, Inc., as a project manager. In November 2004, he took medical leave to obtain treatment for alcoholism and depression. When he returned to work in January 2005, he was informed that he would be transferred to a newly-created position with a reduced salary grade. Shortly after his return, on February 2, 2005, his employment was terminated. Plaintiff alleges that defendants wrongfully reduced his salary grade, accessed his medical records, and terminated his employment in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq*. Plaintiff also brings a state law claim for violation

---

[1] Defendants state that Bremner, Inc., is presently known as Bremner Food Group, Inc. Defendants also state that the corporate name change has no legal effect on plaintiff's claims or the issues to be decided in their summary judgment motion.

of his expectation of continued employment.  Defendants move for summary judgment on all claims.

**I.  <u>Legal Standard</u>**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. <u>AgriStor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); Rule 56(c).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Rule 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## II. Factual Background

Plaintiff was hired on November 1, 1999, as a product manager for several cookie and cracker products. He received promotions on June 1, 2001, and April 1, 2002. In August 2004, plaintiff took a new job assignment and began reporting to Marsha Schniedwind.

Defendants assert that on November 8, 2004, a co-worker reported that plaintiff had returned from lunch under the influence of alcohol. Plaintiff testified that he had a long-standing problem with alcoholism but denies that he ever drank during working hours. Plaintiff also testified that, before this incident, he had had several discussions with his friend, Joseph Micheletto, about taking leave to obtain treatment. Micheletto was vice chairman of defendants' board of directors at the time.

On November 12, 2004, plaintiff was called to a meeting with Schniedwind and Jack Owczarczak, director of human resources, to summarize his work performance and to review the events of November 8, 2004. Owczarczak testified that plaintiff was informed that he had to enter a treatment program and abide by the terms of a "last chance" agreement in order to keep his employment.

On November 19, 2004, plaintiff met with Deborah Lakamp of human resources to sign documents, including the "last-chance agreement." The agreement required plaintiff to acknowledge that he had "committed conduct that would subject him to termination of employment." He was also required to take unpaid leave, complete

an approved treatment program, and participate in aftercare as prescribed. The agreement imposed a two-year probation period, during which time plaintiff was subject to immediate termination if he violated the company's drug and alcohol policy, failed to participate in aftercare, submitted a positive drug or alcohol test, or refused to take a drug or alcohol test. The agreement also required plaintiff to provide "medical documentation verifying any absences not approved in advance."

On December 1, 2004, plaintiff began an intensive outpatient treatment program at St. Elizabeth's Hospital, where he was diagnosed with major depression and chemical abuse/dependency. On December 7, 2004, counselor Byron Loy completed an FMLA certification form. Mr. Loy indicated that the discharge plan would include individual therapy and weekly group therapy in St. Elizabeth's Continuing Care program. Plaintiff successfully completed the intensive program on December 23, 2004. Notwithstanding the FMLA form completed earlier, the written discharge plan specifically excluded participation in the Continuing Care program; instead, plaintiff was directed to attend weekly therapy. At deposition, Mr. Loy could not recall why the discharge plan did not include the Continuing Care program. Evidence in the record indicates that plaintiff complied with the weekly counseling recommendation.

Plaintiff returned to work on January 10, 2005. Because of Schniedwind's dissatisfaction with plaintiff's performance, a decision was made during plaintiff's absence to transfer plaintiff

to a newly-created position. In the new position, plaintiff would report to Richard Koulouris, president of the Bremner and Nutcracker division of Ralcorp. During a meeting with plaintiff, Koulouris told plaintiff that the new position would be at a lower salary grade; plaintiff, however, would receive the same salary as before but he would be eligible for a reduced bonus. Shortly after the meeting, plaintiff sent Koulouris an e-mail that said, "THANKS."

Ms. Lakamp had received a copy of the FMLA form completed by Mr. Loy on December 7, 2004. Based upon the information in that form, she believed that plaintiff was supposed to participate in St. Elizabeth's Continuing Care group sessions. She testified at deposition that she became aware that plaintiff was not attending the Continuing Care program; when she asked him why not, he stated that it was not covered by insurance. On January 20, 2005, Ms. Lakamp told plaintiff that he was required to participate in the Continuing Care program and to pay for it.

On January 26, 2005, plaintiff left the workplace at midday without informing anyone. He testified that he left in order to seek help because he had had a relapse the night before. He denied that he either consumed alcohol or was under the influence of alcohol at work. The following morning, plaintiff was called to a meeting with Lakamp and Owczarczak; they both testified that plaintiff admitted that he had been under the influence of alcohol the day before. Plaintiff disputes their testimony on this point. Plaintiff was suspended pending further investigation; on February

2, 2005, he met with Koulouris, who informed him that his employment was terminated because he violated the terms of the last chance agreement. J. Scott Clark, senior counsel for defendant Ralcorp, states in an affidavit that plaintiff's employment was terminated because he failed to participate in aftercare and because he was under the influence of alcohol on January 27, 2005.

**III. Discussion**

Plaintiff asserts that defendants improperly reduced his salary grade when he returned from medical leave and terminated his employment in retaliation for taking FMLA leave. In his amended complaint, plaintiff additionally alleged that defendants improperly "accessed" his medical records and violated the terms of the last chance agreement. He has failed to proffer any arguments in opposition to summary judgment on these claims, and the Court deems them abandoned.

**A.   The FMLA Claims**

The FMLA entitles an eligible employee to take up to twelve weeks unpaid leave during a twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). Two types of claims exist under the FMLA: interference claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA; and retaliation claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights. Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006),

citing 29 U.S.C. § 2615(a)(1)-(2). Confusion often arises as to whether an employee's FMLA claim "is really about interference with his substantive rights, not discrimination or retaliation." Id., quoting Kauffman v. Federal Express Corp., 426 F.3d 880, 884 (7th Cir. 2005). The difference between the two claims is that an interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while a retaliation claim requires proof of retaliatory intent. Id.

Plaintiff's claim that defendants did not restore him to his prior position or its equivalent is an interference claim. See Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005) (analyzing interference claim and noting that FMLA entitles eligible employee to leave and restoration to prior position); see also Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006). His claim that defendants improperly terminated his employment is a retaliation claim.

### **Reassignment Claim**

Under the FMLA, an employee who takes leave is entitled upon return to be restored to the position he held before leave was taken or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The regulations define "equivalent position" as "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which

must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). The employee must have the same opportunity for bonuses and other similar discretionary and non-discretionary payments. § 825.215(e). Plaintiff has presented evidence that the position offered to him upon his return would lower the bonus he could earn and has thus created a factual dispute with regard to his interference claim.

Defendants argue that plaintiff cannot establish that he was not returned to a substantially equivalent position because he "decided to accept" the new assignment. This contention is based on the "THANKS" e-mail. To the extent that defendants attempt to assert that plaintiff waived his right to be restored to an equivalent position, the assertion fails: employees cannot waive, nor may employers induce them to waive, their rights under the FMLA. 29 C.F.R. § 825.220(d). Elsewhere, the regulations provide that an employee may not be induced to accept a different position against his wishes. § 825.215(e)(4). Whether plaintiff willingly accepted a different position is a factual determination that cannot be made at the summary judgment stage.

Defendant next contends that there is no evidence that plaintiff's salary grade was actually reduced because the position was never finalized. Koulouris and Owczarczak testified that the new position had a lower salary grade; Lakamp's notes reflected a reduction in plaintiff's compensation. At the very least, a factual dispute exists on this point.

**Retaliatory Termination Claim**

Plaintiff alleges that defendants terminated his employment in retaliation for taking FMLA leave. The McDonnell Douglas burden-shifting analysis applies to retaliation claims. Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006). First, plaintiff must establish a *prima facie* case of retaliatory discrimination by showing that he exercised rights afforded by the Act, that he suffered an adverse employment action, and that there was a causal connection between his exercise of rights and the adverse employment action. Id. Second, once plaintiff establishes a *prima facie* case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for their action. Id. Finally, the burden shifts back to plaintiff to demonstrate that defendants' proffered reason is pretextual. Id. Plaintiff must present evidence that (1) creates a question of fact regarding whether defendants' reason was pretextual and (2) creates a reasonable inference that defendants acted in retaliation. Id.

Defendants concede that plaintiff has established the first two elements of his *prima facie* case but assert that he has no evidence of a causal connection between his FMLA leave and his termination. The Court disagrees. Plaintiff returned from leave on January 10, 2005, was suspended on January 27, 2005, and was terminated on February 2, 2005. Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a casual connection has been established. McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1003 (8th Cir. 2005).

Defendants have proffered the following reasons for plaintiff's termination: (1) he failed to participate in a prescribed aftercare program; (2) he was at work under the influence of alcohol on January 26, 2005; and (3) he left work without notice on January 26, 2005, in violation of the last-chance agreement. In opposition to summary judgment, plaintiff notes that he was in compliance with the aftercare program prescribed in his discharge plan. He denies that he consumed alcohol on January 26, 2005. And, plaintiff contends that the last-chance agreement did not require him to obtain prior authorization before leaving the office early on January 26, 2005. Alternatively, he suggests, if his departure did fall within the terms of the last-chance agreement, he was entitled to present documentation that the purpose of the absence was to seek medical care before he was terminated. Plaintiff has presented evidence which creates genuine disputes of material fact with respect to whether the stated reasons for his termination were a pretext for retaliatory intent.

In conclusion, plaintiff's claims that defendants improperly accessed his medical records and violated the last-chance agreement are deemed abandoned. Defendants have failed to establish that they are entitled to summary judgment on plaintiff's reinstatement and termination claims.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants Ralcorp Holdings, Inc., and Bremner, Inc., for summary judgment [Doc. #43] is **denied**.

This matter is set for jury trial on Monday, May 5, 2008, at 9:00 a.m.

								_____
								CAROL E. JACKSON
								UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2008.